[Cite as *State v. Muhammed*, 2012-Ohio-5063.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 97788

---

## STATE OF OHIO

### PLAINTIFF-APPELLEE

vs.

## KHALIF MUHAMMED

### DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-549644

**BEFORE:** Kilbane, J., Boyle, P.J., and Cooney, J.

**RELEASED AND JOURNALIZED:** November 1, 2012

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
Leader Building, Suite 940
526 Superior Avenue
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Ma'rion D. Horhn
Sheila Turner-McCall
Assistant County Prosecutors
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} Defendant-appellant, Khalif Muhammed ("Muhammed"), appeals his convictions and sentence for felonious assault. For the reasons set forth below, we affirm.

{¶2} In May 2011, Muhammed was charged with two counts of felonious assault and attempted murder for shooting D.W., who was 12 years old at the time of the incident.[1] The trial court, pursuant to the state's motion, dismissed the attempted murder count prior to trial. Subsequently, the matter proceeded to a jury trial on the two felonious assault counts. The following evidence was adduced at trial.

{¶3} On April 10, 2011, at approximately 8:30 p.m., D.W. was playing basketball at a friend's house when he received a call from his father, Johnny Williams ("Williams"), to come home. D.W. testified that it takes him approximately two minutes to walk from his friend's house to his father's house on Buckeye Road in Cleveland, Ohio. As D.W. was walking home, he encountered Nayvonne Wilson ("Wilson"), who he knew from the neighborhood. Both of them continued to walk to Williams's house. Shortly thereafter, D.W. and Wilson observed a group of boys across the street, one of which was Muhammed. D.W. recognized Muhammed because they are cousins. D.W. testified that

---

[1]Each count carried one- and three-year firearm specifications.

he saw Muhammed a week earlier at a local restaurant, where Muhammed gave him a hug and called him "Little Cuz." Wilson testified that he knew Muhammed from school.

{¶4} Muhammed told Wilson to "come here." D.W. was afraid that he was going to get "jumped," so he and Wilson continued walking, hoping to get to Williams's house. As D.W. opened the gate to his father's house, he observed Muhammed with his hand by his waist. Wilson testified that at this point he observed Muhammed with a gun. Wilson then said, "[s]o, you going to shoot at me while I got my friend with me." Muhammed fired the gun, and D.W. and Wilson started to run away. Wilson heard D.W. scream, "I'm hit." D.W. then turned around and observed the gun in Muhammed's hand. D.W. and Wilson ran inside Williams's house. D.W. told his father that he was shot in the back and then he passed out. Wilson told Williams that Muhammed shot his son. Williams called 911 and carried D.W. outside until EMS and Cleveland police responded to the scene. D.W. was in the hospital for two months and has had nine surgeries as a result of his gunshot wound.

{¶5} Cleveland police detective Joel Campbell ("Campbell") testified that he was assigned this case on April 11, 2011. On that day, Williams brought Wilson to the police station, where another detective interviewed Wilson. Wilson completed a statement identifying Muhammed as the person who shot D.W. He also was shown a photo array and identified Muhammed as the assailant. Campbell also interviewed D.W., who consistently identified Muhammed as the person who shot him, noting that Muhammed had a green clover tattoo on his face.

{¶6} Muhammed testified on his own behalf. He acknowledged that he knows D.W. because he is his "little cousin," and they saw each other at a local restaurant a couple of weeks before the shooting. He testified that he also knows Wilson and they had a "falling out" when they were younger because Wilson stole Muhammed's bicycle. Muhammed testified that he was with his friend on East 117th Street and Kinsman Avenue when he learned that D.W. was shot. His mother first called him and told him that D.W. was shot by his younger brother, Malik. His mother then called him back and told him the shooter was his other younger brother, Mwesi. His mother called him back a third time, this time telling Muhammed that his older brother, Tariq, shot D.W. Muhammed then received information that Williams said he was going to kill him. He further testified that he did not shoot at D.W. or Wilson. Muhammed acknowledged that he has had a green clover tattoo on his face since 2010 and that none of his brothers have green clover tattoos on their faces.

{¶7} At the conclusion of the trial, the jury found Muhammed guilty of both counts of felonious assault, along with the accompanying firearm specifications. The trial court merged Counts 1 and 2 for purposes of sentencing and sentenced Muhammed to eight years in prison on Count 1. The trial court also merged the firearm specifications, for a total of three years in prison. The trial court ordered that the three-year firearm specification be served prior to the eight years on the felonious assault count, for an aggregate sentence of 11 years in prison.

**{¶8}** Muhammed now appeals, raising the following four assignments of error for review.

## ASSIGNMENT OF ERROR ONE

The trial court erred in denying [Muhammed's] motion for acquittal as to the charges when the State failed to present sufficient evidence against [Muhammed.]

## ASSIGNMENT OF ERROR TWO

[Muhammed's] convictions are against the manifest weight of the evidence.

## ASSIGNMENT OF ERROR THREE

[Muhammed's] sentences are contrary to law.

## ASSIGNMENT OF ERROR FOUR

The trial court erred by ordering [Muhammed] to serve a consecutive sentence without making the appropriate finding required by R.C. 2929.14 and [H.B. 86.]

### Sufficiency and Manifest Weight of the Evidence

**{¶9}** In the first assignment of error, Muhammed argues that the state failed to present sufficient evidence to sustain his felonious assault convictions. In the second assignment of error, he argues that his convictions are against the manifest weight of the evidence.

**{¶10}** The Ohio Supreme Court in *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 113, explained the standard for sufficiency of the evidence as follows:

Raising the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law invokes a due process concern. *State v.*

*Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. In reviewing such a challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

**{¶11}** With regard to a manifest weight challenge, the Ohio Supreme Court in *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, has stated:

[T]he reviewing court asks whose evidence is more persuasive — the state's or the defendant's? * * * "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." [*Thompkins* at 387], citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

**{¶12}** Moreover, an appellate court may not merely substitute its view for that of the jury, but must find that "'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin*.

**{¶13}** Muhammed was convicted of felonious assault in violation of R.C. 2903.11(A)(1) and (A)(2), which provides in pertinent part that "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * * or * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous

ordnance." Muhammed argues there was insufficient evidence to demonstrate that he was the shooter. We disagree.

{¶14} A review of the record in the instant case reveals sufficient evidence that Muhammed shot D.W. D.W.'s version of the incident has never changed. Both D.W. and Wilson testified that they encountered a group of boys as they walked to D.W.'s house. Both of them recognized Muhammed as one the boys in the group. D.W. knew Muhammed because they are relatives, and Wilson knew Muhammed because they went to school together. Muhammed testified that he had a "falling out" with Wilson when they were younger because Wilson stole Muhammed's bicycle.

{¶15} Both D.W. and Wilson testified that Muhammed has a green clover tattoo on his face, which was confirmed by Muhammed's own testimony. They both testified that Muhammed had his hand by his waist and that Muhammed had a gun. Muhammed then fired the gun and shot D.W. in the back. D.W. turned around and observed the gun in Muhammed's hand. When D.W. and Wilson ran inside Williams's house, D.W. told his father that he was shot in the back, and Wilson told him that Muhammed shot his son. The next day, Williams took Wilson to the police station, where he identified Muhammed as the person who shot D.W. When viewing this testimony in a light most favorable to the state, we find sufficient evidence to support Muhammed's felonious assault convictions.

{¶16} Muhammed further argues that the jury "lost its way" because the jury felt that someone had to be convicted for the shooting. In support of his argument,

Muhammed claims that Williams does not believe that Muhammed was the shooter. A review of Williams's testimony, however, reveals otherwise. Williams testified he did not *want* to believe that Muhammed was the shooter because Muhammed was his cousin. He testified that he loved D.W. and Muhammed, and Muhammed and D.W. did not "have any beef with one another." He also testified that while Muhammed was family, he still wanted the person responsible for the shooting to be prosecuted.

{¶17} Based on the foregoing, we cannot say the jury clearly lost its way and created such a manifest miscarriage of justice that Muhammed's convictions must be reversed and a new trial ordered. *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.

{¶18} Thus, the first and second assignments of error are overruled.

Sentence

{¶19} In the third and fourth assignments of error, Muhammed challenges his sentence. The General Assembly, through the enactment of H.B. 86, recently amended Ohio's sentencing statutes. Because H.B. 86 became effective on September 30, 2011, and Muhammed was sentenced on December 16, 2011, the trial court was required to sentence him under the new provisions.

{¶20} In reviewing a felony sentence, we take note of R.C. 2953.08(G)(2), which provides in pertinent part:

> The court hearing an appeal * * * shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the

matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶21} In addition, a sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in R.C. 2929.11: (1) "to protect the public from future crime by the offender and others" and (2) "to punish the offender using the minimum sanctions that the court determines accomplish those purposes." *Id.* at (A). The sentence imposed shall also be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B). Furthermore, R.C. 2929.12 provides a nonexhaustive list of factors a trial court must consider when determining the seriousness of the offense and the likelihood that the offender will commit future offenses.

{¶22} Muhammed first argues that his sentence is contrary to law because the trial court based his sentence on nonstatutory factors. He also argues that his sentence is contrary to law because the trial court failed to consider the factors of R.C. 2929.11. He claims that the trial court based its sentence on the gun violence in the community. Muhammed next argues that the trial court erred when it ordered that his sentence in the

instant case be served consecutive to his sentence in another case, without making the findings required under R.C. 2929.14(C).

{¶23} R.C. 2929.14(C)(4) provides as follows:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶24} As revived, R.C. 2929.14(C)(4) now requires the trial court to engage in a three-step analysis in order to impose consecutive sentences. *State v. Lebron*, 8th Dist. No. 97773, 2012-Ohio-4156, ¶ 10. First, the trial court must find that "consecutive service is necessary to protect the public from future crime or to punish the offender." R.C. 2929.14(C)(4). Next, the trial court must find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id.* Finally, the trial court must find that at least one of the

following applies: (1) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction, or while under postrelease control for a prior offense; (2) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *Id.* at (a)-(c). We have stated that:

> In making these findings, a trial court is not required to use "talismanic words to comply with the guidelines and factors for sentencing." *State v. Brewer*, 1st Dist. No. C-000148, 2000 Ohio App. LEXIS 5455, (Nov. 24, 2000). But it must be clear from the record that the trial court actually made the findings required by statute. *See State v. Pierson*, 1st Dist. No. C-970935, 1998 Ohio App. LEXIS 3812 (Aug. 21, 1998). A trial court satisfies this statutory requirement when the record reflects that the court has engaged in the required analysis and has selected the appropriate statutory criteria. *See State v. Edmonson*, 86 Ohio St.3d 324, 326, [1999-Ohio-110,] 715 N.E.2d 131 (1999).

*Lebron* at ¶ 11.

**{¶25}** In the instant case, Muhammed was sentenced to 11 years in prison, to be served consecutive to his one-year sentence in Cuyahoga C.P. No. CR-545991, for a total of 12 years in prison. In sentencing Muhammed, the trial court stated that it considered the principles and purposes of felony sentencing and the principles in R.C. 2929.11. The court found that a consecutive sentence was necessary to protect the public from future

crime and that Muhammed's sentence was not disproportionate to the seriousness of his conduct and to the danger he posed to the public when it stated that:

> I think one of the most important principles in this case is the overriding purpose; and that is to punish the offender and to protect the public of future crimes by this offender or others. You know, we have a huge problem of gun violence in this community. And I think it is important for trial court judges, once a defendant has been constitutionally convicted, to do all he can or she can to protect future crimes of others.
>
> And I think the message in this case is going to be very simple: You commit a crime with a gun; you gun down someone in our community for no apparent reason whatsoever, other than maybe your [sic] mad at the guy he's with because he stole your bike five years ago, then you do the max.

The trial court also discussed Muhammed's actions in blaming others for committing the offense, obstructing justice, intimidating witnesses, and threatening D.W. and D.W.'s family.

{¶26} The trial court engaged in step three of the analysis when it stated that Muhammed committed the felonious assault in the instant case while on bond in Cuyahoga C.P. No. CR-545991. The trial court further stated that Muhammed's criminal history dated back to 2006, when he was 14 years old. The court stated that "prior to the shooting of [D.W., Muhammed has] been convicted of one, two, three, four, five — five prior [carrying a concealed weapon] cases. One for bringing a gun to school, and the final gun case you had, you shot and nearly murdered [D.W.]."

{¶27} Thus, contrary to Muhammed's assertions, we find that the trial court delineated its considerations when imposing his sentence, complied with the dictates of R.C. 2929.14(C)(4), and made all the required findings to support the imposition of

consecutive sentences. Accordingly, the trial court properly complied with the mandates of H.B. 86.

**{¶28}** The third and fourth assignments of error are overruled.

**{¶29}** Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

MARY J. BOYLE, P.J., and
COLLEEN CONWAY COONEY, J., CONCUR